TONY F. TROWER, a minor, by ABRAHAM TROWER, next friend, Respondent, v. THE CITY OF LOUISIANA, Appellant.

St. Louis Court of Appeals. Argued and Submitted January 8, 1913. Opinion Filed February 5, 1918.

1. **MUNICIPAL CORPORATIONS: Nuisances: Street Obstruction.** One cannot recover from a city for a street obstruction even though a nuisance, its allowance being a wrong common to the public.

2. ———: ———: ———: **Injuries.** One injured by a stray bullet from a street carnival shooting gallery operated by permission and with knowledge of city officers cannot recover from the city.

3. ———: **Police Powers: Liability for Street Obstruction.** Municipal corporations are liable for injuries caused by street obstructions; but such liability is fixed upon the city, not by reason of its violation or disregard of its police powers, nor the doing of acts in connection with its police powers, but by reason of its failure and neglect to properly discharge its corporate duties apart from the duty it owed as a municipality.

4. ———: **Liability for Injuries Arising from Malfeasance or Non-feasance of Corporate Officers.** One injured by a stray bullet from a street carnival shooting gallery cannot recover damages therefor from the city; since, in the exercise of the city's public functions, it was not liable for the nonfeasance or malfeasance of its officers in permitting such an exhibition as a street carnival, and not abating the shooting gallery as being a dangerous part of the exhibition.

Appeal from the Circuit Court of Audrain County.—
*Hon. James D. Barnett,* Judge.

REVERSED.

*James E. Pew, James W. Buffington* and *Robt. A. May* for appellant.

The objection to the introduction of any evidence should have been sustained, and the demurrer to the evidence should have been given, because: (1) Plaintiff bases his cause of action solely on the negligence of defendant in permitting an unlawful obstruction, to-wit, a shooting gallery, to be placed on one of its streets. He does not charge that the alleged permitting of the shooting gallery to be placed there, or that the shooting gallery itself, or the operation thereof, caused the injury, but he alleged that a bullet fired in said shooting gallery caused the injury. (2) The defendant city is not liable for failure to prevent a violation of the law, nor for failure to enforce its ordinances. (3)(a) Plaintiff contributed directly to his injury by voluntarily placing himself knowingly in a dangerous position. (b) Plaintiff was injured while a spectator, in attendance at the shooting gallery, to witness the shooting and enjoy the pleasure that the shooting afforded, and was not a traveler upon the highway.

*R. D. Rodgers, Hostetter & Haley* and *Pearson & Pearson* for respondent.

(1) The practice of challenging the sufficiency of the petition on oral objection to the introduction of evidence is not favored, and is available only when it

is fatally defective, after verdict. Bybee v. Dunham, 198 S. W. 190, 191; Porter v. Ill. S. Ry. Co., 137 Mo. App. 293, 296; Johnson & Co. v. Springfield Ice Mfg. Co., 143 Mo. App. 441, 451; Price v. City of Maryville, 174 Mo. App. 698, 701-2; Downes v. Andrews, 145 Mo. App. 173, 180; Wilkinson v. Misner, 158 Mo. App. 551, 555; Thomasson v. Mer. Town Mut. Ins. Co., 114 Mo. App. 109, 119; Price v. City of Maryville, 174 Mo. App. 698, 701-2; Wiley v. Wiley, 182 S. W. 108; Hays v. Miller Est., 189 Mo. App. 72, 77. A petition charging negligence generally, in the absence of a motion to make certain and specific, or an objection to its efficiency prior to a verdict, is good after verdict. Morgan v. Mulhall, 214 Mo. 451, 457; Peter v. Gilly Mfg. Co., 133 Mo. App. 412, 418. Where an essential fact may be fairly implied from the petition, though .not directly alleged, the defect is cured by verdict. Moellman v. Gieze-Henselmeier Lumber Co., 134 Mo. App. 485, 489; Thomasson v. Mer. Town Mut. Ins. Co., 217 Mo. 485, 497. After the verdict the court will not construe the petition most strictly against the pleader, but the pleading will be liberally construed with the view of substantial justice. Oglesby v. Mo. Pac. Ry. Co., 150 Mo. 137; Cobb v. Lindell R. R. Co., 149 Mo. 135, 155; McKinney v. Northcutt, 114 Mo. App. 146, 160-1. (2) The city was liable for a dangerous, stationary, obstruction in its streets. A city owns and controls its streets as a trustee for the public. It therefore, stands charged by the law with the primary and bounden duty of keeping them free from nuisances, defects and obstructions, caused by itself, or by third parties, if it (in the latter instance) had actual or constructive notice thereof in time to abate the nuisance, remove the obstruction or repair the defect. It cannot shirk that duty or shift it over to, or halve it with others. So much is clear law in Missouri. Welch v. St. Louis, 73 Mo. 71; Oliver v. City of K. C., 69 Mo. 83; Carrington v. St. Louis, 89 Mo. 208; Russell v. Columbia, 74 Mo. 480; Beaudin v. Cape Girardeau, 71 Mo. 395, et seq., and cases cited; Streator v. Breckenridge, 23 Mo. App. 250; Hill v.

Sedalia, 64 App. 1. c. 501, et seq. Benton v. City of St. Louis, 217 Mo. 687, 700; Lindsey v. Kansas City, 195 Mo. 166, 178; Merritt v. Telephone Co., 215 Mo. 299, 311; Buttron et al. v. John C. Bridell, 228 Mo. 622, 630.

STATEMENT.—The city of Louisiana was incorporated and organized under a special charter granted by the General Assembly of this State, the prior Acts incorporating the town being amended and reduced to one Act, under which it was incorporated as a city in 1849 (see Acts 1848-49). The Act of incorporation was declared to be a public Act, the provisions of which the courts take judicial notice. Referring to that Act it appears that the corporate powers are vested in a city council, consisting of two members from each ward, the chief executive officer of the city being designated as a mayor, to be elected by the qualified voters of the city. Among the other duties incumbent upon the mayor were to take care that the laws of the State and the ordinances of the city were duly enforced, respected and observed. The city council is empowered, among other things, to prevent and remove nuisances, to keep in repair the streets, to license, tax, regulate and suppress theatrical and other exhibitions, shows and amusements, to establish, support and regulate the night watch and patrol, to regulate the police of the city, to remove all obstructions from the sidewalks, to prevent and remove all encroachments into and upon all streets established by law, and generally, to make rules, regulations, by-laws and ordinances for the purpose of maintaining the peace, good government and order of the city and enforce the observance thereof by inflicting penalties and generally to make all ordinances necessary and proper for carrying into effect the powers conveyed by the law in the corporation. There may be subsequent amendments to this charter but our attention has not been called to any here material.

It appears that the mayor entered into a contract with an amusement company to put up and conduct in

the streets of the city what is known and commonly referred to as a street carnival. Among other attractions set up in connection with this carnival, was a shooting gallery, which was located on the corner of Fourth and South Carolina Streets, extending some twelve feet north along Fourth Street where South Carolina Street crosses it, and alongside of the City Hall and Court House. This gallery appears to have been inclosed with canvas running up and down the sides, with a canvas top and boards where the guns rested, then a piece of sheet iron at the back of it and pine strips at the edge of this sheet iron. It was equipped with figures of birds and animals and with target guns. The Carnival, it appears, was set up or inaugurated Monday, September 14, 1914, and was to run for a week. On the day that it was set up Tony F. Trower, referred to here as plaintiff and respondent, although he sues by next friend, duly appointed, the boy then being in his 13th year, with two companions, came from their homes in the northwest part of the city of Louisiana, about sixteen blocks from where this carnival was located, to look at the various features of the carnival. Reaching the scene between 7 and 8 o'clock in the evening they wandered about, looking at the various attractions and started home about 9 o'clock of that evening, walking north on Fourth Street. They apparently passed the shooting gallery and heard shooting going on in it but they say they did not go into it. They stopped for a few minutes listening to the talk of a drunken man, who was confined in the calaboose in the basement of the City Hall. While standing there listening to the man talking they saw that there were pieces flying from the lead bullets fired from the gallery, which hit the wall of the Court House, the bullets striking the wall above and two or three feet ahead of them, the gallery being behind them. After stopping and listening to the man talking, they started north on Fourth Street towards home. Plaintiff testified that they had stood right close to the building to keep from getting hit by the bullets, knowing that if they did

not walk close to the wall they were liable to get hit by the bullets. After they had passed the window of the calaboose and walked north along Fourth Street a few feet from the window, plaintiff was hit in his left eye by a splinter, evidently from one of these bullets, producing an injury which necessitated the removal of the eye. That was done a couple of days after the accident and the boy was confined to his bed and to his house for a number of weeks and has suffered the entire loss of his left eye, there being some evidence to the effect that there was danger of infection from that wound which might extend to the right eye and impair the vision from that. There is no question in the case as to the extent of the injury of the boy.

It appears that this carnival was being conducted under a contract purporting to have been entered into by the mayor with the proprietors of the carnival, and attested by the clerk, under which, in lieu of the license fee for conducting the public amusement, a percentage of the receipts were to be paid the city. This contract is not in the abstract before us, although it appears to have been offered in evidence, and whether admitted in evidence or not is not clear, although it was objected to by the defendant. It seems to have been presented and read to the city council and a note to that effect appears on the minutes, but the council took no action on it one way or the other. It also appears that when it was brought to the attention of the city council, one of the members of the council stated its purport, in that it had been agreed by it to allow a carnival company to show in the city the following week and in lieu of a license the city was to receive 25 per cent. of all concessions, 10 per cent. of the shows and 7 and a half per cent. of riding devices and gross receipts. It appeared by oral testimony that the matter of entering into the contract was discussed by the other members of the council at that meeting, but that no formal action was taken in regard to it. However, it, as signed, was filed in the office of the city clerk. It also appears that the attractions of the carnival had

been advertised in the city before its arrival. It further appears that the mayor, possibly the city marshal and some of the city police, were aware of the presence not only of the carnival and its various exhibits but of the setting up and use of this shooting gallery.

Plaintiff introduced and read in evidence an ordinance, the part of which quoted in the abstract under the head of "Duties of the Mayor," being "He shall take care that the laws of the State and the ordinances of the city are duly enforced, respected and observed within the city." Plaintiff also introduced and read in evidence another section of this ordinance under the head of "Police," the part read being: "It shall be the duty of the city marshal and all policemen to obey punctually and to the best of their ability the the orders of the mayor and the police committee to to preserve the peace. . . . It shall be the duty of the city marshal and of policemen to obey punctually and to the best of their ability the orders of the mayor and the police committee to preserve the peace, good order and quiet through the city, to arrest all persons seen in the act of violating any ordinance of the city and report at once to the mayor of the violation of any city ordinance or ordinances and all facts and circumstances connected therewith." Other parts of the ordinance as to the duties of policemen, it seems were offered and read but are not in the abstract. All of these ordinances as offered and when offered were objected to on the part of defendant on the ground that these ordinances and all of them, relating to the duties of the police officers and other officers about enforceing the laws of the city of Louisiana, were irrelevant for the reason that the defendant city is not liable for the refusal, failure or neglect of its officers to perform their duties, and that these ordinances offered did not have to do with the private corporate affairs of the city of Louisiana; that they have to do solely with the governmental affairs of the city and that it is improper to admit such ordinance in evidence in the case, it being claimed that they are police regulations for the safety

and welfare of the public in general and have to do with the State rather than the private corporate affairs of the city. Another ordinance, apparently offered and read in evidence by plaintiff, but not set out in the abstract, was objected to and excluded by the court, on the ground that it did not seem to throw any light on the issues in the case.

The petition in the case, averring the incorporation of the city of Louisiana as a municipal corporation, existing and organized under the laws of this State, and averring that as such it was the duty of the city to keep Fourth Street, one of the streets in the city, on which the accident happened, and the sidewalks pertaining thereto, which it is averred constituted a public highway of the city, in a reasonably safe condition for the public use, for cause of action avers that on September 4, 1914 (so says the petition, but the date appears to have been the 14th), the defendant, through its officers, agents, servants and employees, negligently, carelessly, wrongfully and unlawfully permitted an obstruction, to-wit, a shooting gallery to be placed on Fourth Street by some one to the plaintiff unknown, which obstruction, it is averred, was then and there not only an unlawful and wrongful, but a dangerous obstruction; that on the day stated, while plaintiff was walking along the sidewalk of Fourth Street and lawfully on that sidewalk and in the exercise of ordinary care "a bullet fired in said shooting gallery, so unlawfully, wrongfully and negligently, and carelessly allowed to be erected on said street, by the officers of said city, glanced and struck this plaintiff in the eye, causing him great suffering and pain, and the loss of the sight of his eye. That by reason of said wrongful, unlawful and negligent act on the part of said city through its officers, agents, employees and servants, in so permitting said obstruction to be placed and maintained on said street, plaintiff has been damaged in the sum of $7500." For this and costs he prays judgment.

The amended answer of the defendant upon which the case was tried, after a general denial sets up cer-

tain ordinances of the city then in force. As those ordinances were not put in evidence, it is unnecessary to notice them. The answer avers that if any obstructions were placed in the streets of the city, it was done without the knowledge or authority of the city, in violation of its ordinances and that the placing of the alleged obstruction, if any, was an unlawful act on the part of the person or persons so placing the obstruction in the street by which defendant is not bound; that if plaintiff was injured by a bullet being fired which glanced and struck plaintiff in the eye, this shooting was done in violation of the ordinance of the city and was an unlawful act, done without permission of the city and defendant not bound by it. Contributory negligence of the plaintiff is also pleaded as well as assumption of risk and that by ordinary care he could have avoided the injury.

There was a reply to this.

There was a trial before the court and a jury, the evidence introduced by plaintiff being substantially as above stated. At the conclusion of its introduction defendant asked an instruction to the effect that plaintiff could not recover. This was refused, defendant excepting and introducing no evidence. The court gave three instructions asked by plaintiff and four at the instance of defendant, refusing eleven which defendant asked. In the view we take of this case it is unnecessary to set out any of these asked, given or refused, save the one in the nature of a demurrer, which we have noticed.

The jury returned a verdict in favor of plaintiff for $4000, judgment following, from which, interposing a motion for new trial as well as one in arrest and excepting to the overruling of these, the defendant has duly appealed.

REYNOLDS, P. J. (after stating the facts as above).—There are four assignments of error.

The points argued are to the overruling of the objection of the defendant to the introduction of any evidence and to overruling the demurrer to the evi-

dence at the close of the case. Under this it is argued, first, that plaintiff bases his cause of action solely on the negligence of the defendant in permitting an unlawful obstruction, to-wit, a shooting gallery, to be placed on one of its streets; that he does not charge that the alleged permitting of the shooting gallery to be placed there, or that the shooting gallery itself, or the operation thereof caused the injury but alleges that a bullet fired in the shooting gallery caused the injury. Second, that the defendant city is not liable for failure to prevent a violation of the law nor for failure to enforce its ordinance. Third, that the plaintiff contributed directly to his injury by voluntarily placing himself in a dangerous position; that he was injured while a spectator in attendance at the shooting gallery to witness the shooting and enjoy the pleasure that the shooting afforded and was not a traveler upon the highway.

Defendant did not demur to the petition but objected, when the trial opened, to any evidence, on the ground that the petition failed to state any cause of action. This objection was properly overruled. The petition does aver that plaintiff was injured by an unlawful obstruction in the street and so far it was good. Whether the averment was sustained by the evidence, is another matter.

In the light of the testimony in the case we dismiss from consideration the claim that plaintiff was injured by reason of an obstruction in the street. The carnival, and as part of it, the shooting gallery, did not obstruct plaintiff in the use of the street. When he was injured, according to his own testimony, he had passed beyond the various booths and exhibits pertaining to that affair and was beyond and north of the shooting gallery or target stand. Even granting that the carnival being permitted to show on the public streets created an obstruction and was a nuisance, its allowance was a wrong common to the public and gave plaintiff no right of private action. [Nagel v. Lindell Ry. Co., 167 Mo. 89, 66 S. W. 1090.] Plaintiff was in-

jured, not by an obstruction, as such, but by the allowance by the city officers of the unlawful use of one of the features of the carnival, that is, allowing one of its adjuncts to be used for the firing off of guns loaded with bullets. If the presence of the carnival in the street was a nuisance, it was common to the public and plaintiff could only recover for damages specially sustained by him by reason of obstructing his use of the street.

Beyond all question, the cities and municipalities of our State are liable for injuries caused by obstructions. Our reports are full of cases of that kind, sustaining actions against the city, but in all those cases the liability is fixed upon the city not by reason of its violation or disregard of its police powers, or the doing of acts in connection with its police powers, but by reason of its failure and neglect to properly discharge its corporate duties apart from the duty it owed as a municipality. Such are all the cases cited by learned counsel for respondent, of which Benton v. City of St. Louis, 217 Mo. 689, 118 S. W. 418, and Buttron v. Bridell, 228 Mo. 622, 129 S. W. 12, are types. Those cases and the like are not applicable here. The injury which plaintiff sustained was the result of a splinter from a bullet fired from a shooting gallery or target tent, allowed and suffered by the city authorities to be placed and operated in the streets of the city, and the crucial question in this case is whether the city, as a municipality, is liable for damages sustained by reason of allowing this shooting gallery, as we will call it, in the street.

We may premise our consideration of the discussion of the question here involved by saying that neither by general statute nor by the acts of incorporation under which the city of Louisiana is acting, nor by any valid contract, is there any liability thrown upon the city. Its liability, if existing, is referable entirely to its position as agents of the people of the community and of the State.

We find and are referred to no decision of the courts of our State that covers the same state of facts as here present, that is, an injury to a pedestrian by reason of the city allowing firearms to be used in its streets. That is the real point here.

It is said in 28 Cyc., p. 1289, sec. III. par. b;

"In applying the principle that where a municipality is acting in its governmental capacity it cannot be held civilly liable for any act or omission, it is held that there is no liability for a failure to pass ordinances, even though they would, if passed, preserve the public health or otherwise promote the public good, or for any omission to enforce such ordinances or to see that they are properly observed by its citizens or those who may be resident within the corporate limits, or for injury occurring while the operation of an ordinance is suspended under the action of the municipality. This doctrine has been applied to actions brought to recover damages from the municipality for injuries both to person and property based upon failure to enact or enforce ordinances with regard to the use of streets and sidewalks; to injuries resulting from the firing of explosives or setting off of fire works, even though the acts were permitted or participated in by the municipality through its officers; . . . "

In the same work, p. 1299, par. h, subsection 1, it is said:

"When, by the action of the state, a municipal corporation is charged with the preservation of the peace, and empowered to appoint police boards and other agencies to that end, the corporation *pro tanto* is charged with governmental functions in the public interest and for public purposes, and in the exercise of its powers and duties in respect of the enactment and enforcement of police regulations it is entitled to the same immunity as the sovereign granting the power unless such liability is expressly declared by the sovereign. The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity but in the interest of the public."

It is further said in the same work, p. 1356, par. II, sec. f:

"The manner in which a highway of a city is used is a different thing from its quality and condition as a street. The construction and maintenance of a street in a safe condition for travel is a corporate duty, and for a breach of such duty an action will lie; but making and enforcing ordinances regulating the use of streets brings into exercise governmental, and not corporate, powers, and the authorities are well agreed that for a failure to exercise legislative, judicial, or executive powers of government, there is no liability. Hence, upon this principle, it has been held that a municipal corporation, in the absence of an express statutory declaration to the contrary, is not liable for an injury caused by the failure to pass or to enforce an ordinance prohibiting the firing of cannon or firearms in its streets; the explosion of fireworks; the running at large of cattle and swine; horse-racing; or the riding of bicycles upon the sidewalks."

The text of these paragraphs is supported by a multitude of cases.

By that learned writer, Judge DILLON, it is said:

"Many of the powers exercised by municipalities fall within what is known as the police power of the State, and are delegated to them to be exercised for the public good. Of this nature is the authority to suppress nuisances, preserve health, prevent fires, to regulate the use and storage of dangerous articles, to establish and control markets, and the like. . . . Laws and ordinances relating to the comfort, health, convenience, good order and general welfare of the inhabitants are comprehensively styled 'Police Laws or Regulations.' " [1 Dillon, Municipal Corporations (5 Ed.), p. 553, sec. 301.]

In volume 4 of the same work it is said, p. 2840, sec. 1627:

"Unless there be a valid contract creating, or a statute declaring, the liability, a municipal corporation *is not bound to secure a perfect execution of its by-laws,*

relating to its public powers, and it is not responsible civilly for neglect of duty on the part of its officers in respect to their enforcement, although such neglect results in injuries to private persons which would otherwise not have happened."

In Murtaugh v. City of St. Louis, 44 Mo. 479, it being there stated that the question presented is of first impression and without precedent in our State, the question involved was whether the city was liable for the negligence and misfeasance of the hospital authorities and servants in the administration of a particular charity, the City Hospital, and the court held it was not, saying, "no provision of the city charter or of any ordinance is cited in support of the action." The court further says (l. c. 480): "There have been, however, various adjudications upon the general question of the liability of municipal corporations for the acts and omissions of their officers and servants. The general result of these adjudications seems to be this: where the officer or servant of a municipal corporation is in the exercise of a power conferred upon the corporation for its private benefit, and injury ensues from the negligence or misfeasance of such officer, or servant, the corporation is liable, as in the case of private corporations or parties; but when the acts or omission complained of were done or omitted in the exercise of a corporate franchise conferred upon the corporation for the public good, and not for private corporate advantage, then the corporation, is not liable for the consequences of such acts or omissions upon the part of its officers and servants." Many authorities from the courts of other States are cited in support of this.

In Armstrong v. City of Brunswick, 79 Mo. 319, the petition in the case, setting up the non-performance of the duty of the city to keep it clear of noxious, offensive and unwholesome vapors and other nuisances, to the damage of plaintiff, who was the proprietor of a hotel, and setting up the charter provision of the city,

which gave it power to make regulations to secure the general health of the inhabitants and to abate, prevent and remove nuisances, charged that by the maintenance of a hog pen, plaintiff was injured in his business in the conduct of his hotel. A demurrer to the petition was sustained and plaintiff brought error to the Supreme Court. Reciting these provisions about the powers of the city, it is said that these powers given were conferred upon the corporation for the public good and not for private corporate advantage. Murtaugh v. City of St. Louis, supra, is referred to and quoted approvingly as settling the non-liability of the city.

In Worley v. Inhabitants of the Town of Columbia, 88 Mo. 106, damages were sought for the arrest and false imprisonment of plaintiff by the officers of the town. A demurrer was interposed to this petition and sustained. Setting out the act incorporating the town and the ordinance requiring auctioneers to take out a license, for failure to do which plaintiff was arrested and imprisoned, it is said (l. c. 111): "The substantial and broad question thus presented, is whether such municipal corporation is liable for a trespass, committed by its officers, in the execution or enforcement · of a void ordinance." (It was claimed that this ordinance was void.) "It is the rule in this State in this class of cases, that the corporation is liable for the act of its agents, injurious to others, when the act is in its nature lawful and authorized, but done in an unlawful manner or unauthorized place, but is not liable for injurious and tortious acts, which are in their nature unlawful or prohibited," citing several cases from our State.

In Ulrich v. City of St. Louis, 112 Mo. 138, 20 S. W. 446, it is held that a municipal corporation is not answerable in damages for the negligent acts of its officers in the execution of such powers as are conferred on the corporation or its officers for the public good. A number of cases from our State are cited in support of this. [See, also, Jefferson County v.

St. Louis County, 113 Mo. 619, 21 S. W. 217; Connor v. City of Nevada, 188 Mo. 148, 1. c. 152-153, 86 S. W. 256, and Cassidy v. City of St. Joseph, 247 Mo. 197 l. c. 205 et seq., 152 S. W. 306.]

In Evans v. Holman, 202 Mo. 284, 100 S. W. 624, the Supreme Court follows and approves an opinion of our court in the case of McVey v. Barker, 92 Mo. App. 489.

We have not overlooked the case of Fuchs v. City of St. Louis, as reported in 113 Mo. 168, 31 S. W. 115, 34 S. W. 508, when it was first before our Supreme Court, and when again there and reported under the same title in 167 Mo. 620, 67 S. W. 610. We find nothing in them here pertinent.

Our own court in Wilks v. City of Caruthersville, 162 Mo. App. 492, 142 S. W. 800, a case which involved the responsibility of the city for an injury to a horse which had been taken up by a city officer as a stray in the streets of the city, as it was claimed, contrary to the ordinance, it is held that in taking up the stray and tying it to a fence, from which it broke loose, carrying away with it a board and in running tripped over the board and was killed, that the city was not liable. Referring to the case of Barree v. City of Cape Girardeau, 197 Mo. 382, 95 S. W. 330, where the plaintiff was injured through the wilfull assault of the street commissioner while exercising the functions of his office, and in which the city was held liable, our court dwelt on the fact that the injury was so inflicted, and the defendant city liable to respond in damages for the reason that the injury resulted from the exercise of a franchise or power of the city conferred as a private advantage. "But though such be the rule in these cases," said our court in the Wilks Case, supra, (l. c. 498), "it is not so where it appears the injury results from the exercise of a power conferred upon the municipality exclusively for the public good. Such, for instance, is that to maintain a city workhouse or hospital, or that to abate, prevent and remove nuisances, or that to establish a fire department, or those relat-

ing to the public peace and good order or the suppression of vice and immorality or preserving the public health, caring for the poor or providing for education, or those relating to the general welfare, coupled with judicial or legislative discretion touching the manner or mode of their exercise and the like. Touching these powers, and to the extent that cities exercise them, their duties are regarded as due to the public and not to individuals. Indeed, as to these it is said the city's agents and officers are not the agents and officers of the corporation but of the greater public, the State at large. . . . In other words, no liability may be enforced against the city for the negligent conduct of its servants or agents in exercising a franchise which finds its origin in the powers of the character last enumerated.''

Most of the cases from our courts which we have cited above are referred to in support of this, as also many authorities from other States. That case is in line with the case at bar and we think that the principle there announced is entirely applicable here.

When we turn to the decisions of courts of other jurisdictions, we find them announcing the same rule; that is, non-liability of the municipality for the acts of its officers acting for the public generally and not in the line of corporate duty.

Thus in Ball v. Town of Woodbine, 61 Iowa, 83, the plaintiff was in the town and injured by a skyrocket there set off during an exhibition of fireworks. It was charged that the fireworks were a dangerous public nuisance at the time they were placed and set off in the streets and squares of the city and were permitted by the town to be used and fired off to the great danger of persons who had occasion to be upon the streets and highways. A demurrer to the petition was sustained and plaintiff appealed. The Supreme Court of Iowa held that the demurrer was properly sustained, first, on the ground that the petition did not state facts showing a joint liability against the town of Woodbine and the other defendants, the other defendants being the

persons in charge of the fireworks; second, that the alleged acts of the officers of the town, or the town itself, in aiding and assisting in exploding the fireworks, were beyond the jurisdiction of the officers of the town in the exercise of their duties as town officers. The court held that the facts showed no more than a violation of the ordinance of the town in which violation the officers of the town were active participants and, said the court (l. c. 84): "It is well settled that cities and towns are liable for damages occasioned by obstructions negligently allowed to remain in the public streets of the corporation, and the like, and the authorities cited by counsel for appellant are actions for injuries of this character. These cases are founded upon the principle that the city, in the exercise of its municipal authority over public places, is guilty of negligence in the discharge of a duty within the scope of its powers. It is argued that the fireworks which caused the injury in this case were a dangerous public nuisance, which the officers of the city actively participated in maintaining. It can make no difference who were the individuals who violated the city ordinance. A city is no more liable for the consequences of a violation of an ordinance by its mayor or council as individuals, than it would be if the illegal act were done by a. private citizen." The court cites Morrison v. Lawrence, 98 Mass. 219, as holding that the city was not liable to a person who was wounded by a rocket which was purchased by a committee of the city council, and negligently fired under their direction in celebrating the fourth of July.

To the same effect see Borough of Norristown v. Fitzpatrick, 94 Pa. St. 121, which was an action brought against the borough to recover damages for injury to plaintiff by reason of a cannon having been fired off in the public street during an authorized celebration. In that case it was held that even admitting that the assembly in the streets was a nuisance, and that of the worst kind, and although a policeman was stand-

198 M. A.—24

ing by and made no effort to stop the firing, that the borough was not liable; that cities, etc., have been held responsible for neglect in the maintenance of highways, etc., because they belong to their immediate jurisdiction and over them they alone have jurisdiction, but the conservation of the peace is a public duty, put by the commonwealth into the hands of various public officers, and that the fact that the police officers and other officers of the city, whose duties are of a public nature and whose appointment devolves on the city by the State as a convenient mode of exercising a public function, violate or neglect their duties, does not render the municipality liable for their unlawful or negligent acts.

In Dudley v. City of Flemingsburg, 115 Ky. 5, 72 S. W. 327, it is held that a municipal corporation, in the preservation of peace, maintenance of good order, and enforcement of the laws for the safety of the public, possesses governmental functions and therefore is not liable for injuries sustained by one who is run into by a coasting sled on the street. In that case the Court of Appeals of Kentucky cites and quotes approvingly from Jolly's Admx. v. City of Hawesville, 89 Ky. 281, 12 S. W. 313, in which case a large number of persons, in the presence of and with the consent of the city officials, with guns and pistols, had assembled and engaged in a sham battle, pursuing and shooting at each other in such close proximity as to endanger the lives of those who were not, as well as those who were, engaged. Quoting from Prather v. City of Lexington, 13 B. Mon. 563, in the Dudley Case (l. c. 11), it is said that the court proceeded upon the theory that the "officers of a city are *quasi* civil officers of the government, although appointed by the corporation. They are personally liable for their malfeasance or nonfeasance in office, but for neither is the corporation responsible." Quoting further from Jolly's Admx. v. City of Hawesville, supra, the Court of Appeals in the Dudley Case says (l. c. 12): "Such has been the uniform ruling of this court, and a different one would be not only perversive of the main design of creating municipal cor-

porations, intended principally as auxiliary of the State government, but open the door for actions against cities on account of every personal injury in any degree attributable to misfeasance or nonfeasance of police officers, and thus impose burdens on taxpayers in no just sense at fault or liable.''

In a very full examination of the authorities, the Supreme Court of Wisconsin arrived at the same conclusion in Schultz v. The City of Milwaukee, 49 Wis. 254.

In Lincoln v. City of Boston, 148 Mass. 578, it was held that the city was not liable for injuries occasioned to a person by reason of his horse becoming frightened, while being driven along an adjoining street, by a cannon being fired on the Common under a license granted in pursuance of a city ordinance.

In Arms v. City of Knoxville, 32 Ill. App. 604, it is held that the negligence of the police or police officers in failing to stop the firing of a cannon known to be dangerous upon the streets of a city, does not render the city liable to the administratrix of the person killed as a result of such negligence. The cases are very fully considered in this opinion, not only from the State of Illinois but throughout the country. The court in coming to the conclusion of the case (l. c. 610) says: ''A municipal corporation is not liable for the nonfeasance or misfeasance of the officers of its police. . . . For failure to exercise governmental power cities are not liable.'' Among other authorities quoted and followed in that case is that of Ball v. Town of Woodbine, supra.

Our conclusion in this case is that the city authorities, or those of them who did permit the location of this street fair, and as a part of it the setting up and operation of this shooting gallery, had no authority under the charter of the city, or the laws of the State, to grant such permission, and the city officers and the city police failed in their duty in not abating, at least this dangerous part of that exhibition. But the city of Louisiana, as a municipal corporation of the State, and exercising its public functions, is not liable for

the damages which resulted from the nonfeasance or malfeasance of its officers.

In this view of the case it is unnecessary to consider other questions suggested, as, for instance, the question of the contributory negligence of the plaintiff and the admission and exclusion of evidence and instructions given or refused, save as to the one asked by appellant, at the close of all the evidence in the case, that the plaintiff could not recover on the law and on the facts. That should have been given.

The judgment of the circuit court is reversed. *Allen* and *Becker, JJ.*, concur.