CHESTER F. HEALY, Appellant, v. KANSAS CITY.

Division Two, March 28, 1919.

1. CITY: Municipal Functions: Police Regulations: Liability for Injuries. One of the functions of a municipal corporation relates to the discharge of its governmental authority, and in performing those duties it is not liable for personal injuries due to the negligence of its agents. If the negligent acts occurred in the exercise by the city of its police powers it is not liable in damages for personal injuries.

2. ———: ———: ———: **Sham Battle: Cause of Action.** Although the petition alleges that the city, through its municipal council, in pursuance to ordinance and resolution, provided for a Fourth of July celebration in a park belonging to the city, and ordered and directed the park board to make arrangements with a military organization to conduct such celebration, and in pursuance to such arrangements a sham battle was conducted and during its progress, plaintiff, temporarily connected with the organization and inexperienced in handling the gun prematurely discharged and by which he was injured, due to the neglect of the park board, yet as the duties imposed upon the board to prevent injury to persons and property who might attend the celebration was the same kind of management imposed upon municipal authorities, in the exercise of their governmental functions, to prevent disorders and dangers in any crowd, the petition did not state a cause of action for damages against the city.

3. ———: ———: **Nuisance in Park.** It is a city's duty to use care to maintain its public parks in a reasonably safe condition, and that duty it performs in its proprietary or private character, and for a failure to perform it the city is liable for ensuing damages. But the maintenance of good order in a public park, and the prevention of dangerous conditions therein caused by gathering crowds or by lawless or imprudent conduct of individuals, relate to the city's governmental functions, for the negligent performance of which it is not liable in damages.

4. ———: ———: ———: **Sham Battle.** A sham battle in a public park and the firing of a gun by a military organization conducting the same do not of themselves constitute a dangerous nuisance, and if the injury to plaintiff was caused directly by the presence of a jostling crowd and the negligence of some member of the organization in prematurely firing a gun, the city is not liable for his injuries.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner*, Judge.

AFFIRMED.

*R. J. Holmden, Strother & Campbell* and *George W. Day* for appellant.

(1) Swope Park was owned by Kansas City. The charter provides that the Board of Park Commissioners shall have "control and management" of its parks. The petition alleges that the defendant and its Board of Park Commissioners permitted and directed and authorized the use of said park for the celebration.

Even if there were no specific charter grant of authority to own, control and manage Swope Park, it would be liable to plaintiff, if his injuries were the result of negligent acts of the city's servants or agents. Hunt v. City of Boonville, 65 Mo. 623; Dooley v. Kansas City, 82 Mo. 444. The point made by defendant that the petition shows an *ultra vires* act, is untenable. (2) Nor was the sham battle and celebration a purely governmental act for which the city can not be held liable. Up to the point when the city resolved that there should be a celebration in Swope Park, it was acting in its governmental capacity. But once that step was taken, its acts thereafter became ministerial acts, and it became its duty to exercise such care as a private person should observe in the same circumstances. The petition not only avers that the city permitted the celebration and sham battle, but also states that the city participated therein, and through its servants and agents, directed plaintiff and others engaging therein. Morrison v. Lawrence, 98 Mass. 219; Love v. Raleigh, 116 N. C. 296; Administrator, etc. v. Montgomery, 53 Ala. 527; Tindley v. Salem, 137 Mass. 171; Lincoln v. Boston, 148 Mass. 578; Robinson v. Greenville, 42 O. St. 625; Morristown v. Fitzpatrick, 94 Pa. St. 121. (3) Appellant contends that he stated in his petition facts which entitled him to go to a jury on the question of a nuisance in fact. According to these allegations, defendant not only permitted the nuisance, but it created, or helped to create it. Capp v. City of St. Louis, 251 Mo. 345. (4) It was the circumstances surrounding the sham battle and those operating the gun, the discharge of which injured plaintiff, which gives plaintiff his cause of action. Dowell v. Guthrie, 99 Mo. 653.

*E. M. Harber* and *Francis M. Hayward* for respondent.

(1) A municipality is not liable for the negligence of its agents or servants if such act is outside the

powers of the corporation as conferred by law, whether its officers directed the performance of the act or it was done without express authority. Dillion on Mun. Corp. (5 Ed.), sec. 1650, note; Smith v. Rochester, 76 N. Y. 506; Love v. Raleigh, 116 N. C. 296; Administrator v. Montgomery, 53 Ala. 527; Foxen v. Santa Barbara, 134 Pac. 1142·; Marth v. Kingfisher, 22 Okla. 602; Rowland v. Gallatin, 75 Mo. 134; Morrison v. Lawrence, 98 Mass. 219; Trower v. Louisiana, 198 Mo. App. 352. If the city had the power to provide for such celebration it would be a governmental function on the part of the city and there would be no liability on its part. Tindley v. Salem, 137 Mass. 171; Lincoln v. Boston, 148 Mass. 578; Robinson v. Greenville, 42 Ohio St. 625; Morristown v. Fitzpatrick, 94 Pa. St. 921; Hall v. Woodbine, 61 Iowa, 83; Pope v. New Haven, 91 Conn. 79. Neither plaintiff nor the soldier that fired the cannon was a servant of the city, so there can be no liability on the part of the city. Lincoln v. Boston, 148 Mass. 578; R. S. 1909, sec. 8359. The battery was a governmental. agent for whose conduct the city was not responsible. Each member of the battery was an agent of the State. Moody v. Ward, 13 Mass. 299; Castle v. Duryee, 1 Abbott Dec. 327; R. S. 1909, sec. 8359. If the act complained of on the part of the city was unlawful then plaintiff having participated in such act cannot recover. Gilmore v. Fuller, 198 Ill. 130; Hall v. Corcoran, 107 Mass. 253; Reusch v. Rolling Mills Co., 118 Ky. 369; Rowe v. Hammond, 172 Mo. App. 203. (2) It is not unlawful *per se* to permit the discharge of a cannon or fire works in a public park, for such discharge is not a nuisance *per se.* Kerr v. Brookline, 208 Mass. 190; DeAgramonte v. City of Mt. Vernon, 112 N. Y. App. Div. 291; Dowell v. Guthrie, 99 Mo. 653; Mastinson v. Village of Mt. Vernon, 58 N. Y. 39; Wheeler v. City of Plymouth, 116 Ind. 158. If the acts alleged by plaintiff amount to a nuisance, then plaintiff having participated in the discharge of cannon and in such sham battle, cannot

recover. Gilmore v. Fuller, 198 Ill. 130; Hall v. Corcoran, 107 Mass. 253; Reusch v. Rolling Mills Co., 118 Ky. 369; Rowe v. Hammond, 172 Mo. App. 203.

WHITE, C.—The plaintiff sued for damages on account of personal injuries. A demurrer to his petition, filed by the defendant, was sustained. Plaintiff declined to plead further and from the judgment thereupon rendered for defendant he appealed.

The plaintiff was injured July 4, 1914, while assisting in the conduct of a sham battle at Swope Park in Kansas City, and the suit arose from that incident. The petition is in two counts.

The first count alleges the character of the defendant as a municipal corporation and sets out several ordinances which provide for the control of guns, pistols and substances of explosive character by the Board of Park Commissioners, and forbid the discharge of such weapons, but allow for public exhibitions of fire works in charge of competent persons under permit issued by the mayor; also a resolution of the City Council providing for the celebration of the Fourth of July, 1914, at Swope Park, which was owned by the city. The petition then alleges that there were three military organizations in Kansas City, among them Battery B, having charge of three-inch breech-loading guns which in handling required the services of officers and men of intelligence and training; that Battery B did not have its full quota of enlisted men and of horses, of which the city was fully aware; in order to take part in the contemplated sham battle it was necessary to obtain more men and horses; that the plaintiff was not a member of the battery, but the Board of Park Commissioners of the defendant city "ordered, directed and permitted plaintiff and others not members of the battery to act as its regular members" and assist such battery in carrying out the sham battle, and "ordered, directed and permitted Battery B to take part in the sham battle;" that the defendant's agents and

officials "ordered and directed and permitted plaintiff to be placed in a gun squad and assigned to one of the guns of the battery," and directed and permitted plaintiff to swab out or clean a gun, and while performing that duty the gun was discharged, causing the injury sued for.

The acts of negligence alleged which, it is claimed caused the injury and render the city liable were: first, that the defendant's officials ordered, directed and permitted plaintiff to be placed in the gun squad when he was wholly untrained and inexperienced in the handling and firing of said gun; second, they failed to provide him with a reasonably safe place in which to aid and help carry out the said sham battle, because crowds were permited to congregate about the gun and gun squads so they could not properly handle and fire the guns; third, the city officials directed and permitted incompetent and inexperienced persons to handle and fire the gun in conjunction with plaintiff, knowing them to be such; fourth, they failed to inform or warn plaintiff of the dangerous character of the gun which he assisted to handle; fifth, they ordered the gun to be discharged when they knew the plaintiff was in position to sustain injury.

The second count alleges the same matters with regard to the arrangement for and conduct of a sham battle, the ownership and control of Swope Park by the city, and the agency of the Board of Park Commissioners in conducting the sham battle. It then alleges that the manner of loading and firing the guns mentioned was conducted by inexperienced persons without sufficient police protection to keep the crowds back, creating such conditions as to constitute a common nuisance, by reason of which negligent failure of the city to perform its duty and prevent such nuisance the plaintiff was injured.

It will be seen that the first count of the petition predicates liability on the ground that the city con-

ducted and managed the sham battle in a negligent manner and thereby caused the injury.

The second count seeks to recover on the ground that the city negligently permitted dangerous conditions to occur in a public park whereby the plaintiff was injured.

I.   It is claimed by respondent that the city was acting *ultra vires* in conducting a Fourth of July celebration of the character described in the petition. If it could be inferred from the allegation that the city undertook the expense of putting on the cele- **Municipal** **Functions.** bration it would certainly be beyond its power; no provision of the charter has been pointed out which would authorize that act.   But the petition will hardly bear that construction.   Appellant points to Section 6, Article 13, of the Charter of 1909 for Kansas City, as giving the authority.   That section invest the Board of Park Commissioners with authority "to superintend, control and manage any and all parks . . . belonging to or under the control of the city."

The allegation of the petition is that the city, in pursuance of certain ordinances and resolution, proceeded to provide for the celebration and "issued permits, and also ordered, permitted and arranged with Battery B and the other military organizations mentioned to conduct such celebration, and the sham battle and the celebration were enacted and carried on under said order, permission and arrangement."

From this it is plain that the City Council, not the Board of Park Commissioners, made the arrangement with the military organization. The authority of the board was to *manage* the *park* with whatever crowds might be assembled. It had no authority to conduct a sham battle, which in fact was conducted by the military organizations by the arrangement with the City Council. The most that can be said of the allegations regarding the manner in which the officials "ordered

277 Mo.40

and directed'' the plaintiff and the members of the battery to do certain things is that the Board of Park Commissioners retained a sort of superintendency or control over the conduct of the proceedings. It is not to be inferred that that control exceeded the powers granted to such board by the charter.

Municipal corporations are considered in two aspects. One where their functions relate to the corporate interests only, and the other where they discharge certain governmental functions. The authority for the latter is characterized as "quasi-delegated sovereignty for the preservation of the public peace and safety and the prevention of crime." In performing the duties relating solely to its corporate character the city is liable for injuries caused by negligence of its agents; in performing duties relative to the latter or governmental character for the public good, it is not liable. [McKenna v. City of St. Louis, 6 Mo. App. 320; Murtaugh v. City of St. Louis, 44 Mo. 479.] These two early cases have been followed and quoted by many late cases. [Sprague v. City of St. Louis, 251 Mo. 624; Behrmann v. City of St. Louis, 273 Mo. 578; Trower v. City of Louisiana, 198 Mo. App. 352; Ulrich v. City of St. Louis, 112 Mo. 138; Bullmaster v. City of St. Joseph, 70 Mo. App. 60; Cassidy v. St. Joseph, 247 Mo. 197, l. c. 207-8.] A quotation from Dillon on Municipal Corporations appears in some of the later decisions, 1 Dillon on Mun. Corp. (5 Ed.) sec. 301, as follows:

"Many of the powers exercised by municipalities fall within what is known as the *police power* of the State, and are delegated to them to be exercised for the public good. Of this nature is the authority to suppress nuisances, preserve health, prevents fires, to regulate the use and storing of dangerous articles, to establish and control markets, and the like . . . Laws and ordinances relating to the comfort, health, convenience, and good order, and general welfare of the inhabitants are comprehensively styled 'Police Laws or Regulations.' "

The authority exercised by the Board of Park Commissioners in managing the operations for the Fourth of July celebration was limited to the preservation of good order, the regulation of the crowds and the conduct of the battle in such a way as to prevent injury to property and to persons who might be attendant upon the celebration. It is the same kind of management that would be imposed upon the authorities in preventing disorders and dangers in any other kind of crowd that might assemble in the city.

The distinction between governmental functions, authority exercised for the public good, and corporate functions, duties performed for the comfort and convenience of the corporation, is not always clear and many cases arise where it is difficult to determine on which side of the line an act complained of falls. But in the present case there is no difficulty in determining that the negligent acts complained of occured in the exercise by the city of its police powers, so that the demurrer was properly sustained to the. first count of the petition.

II. The second count of the petition is based on the alleged negligence of the city in permitting a dangerous nuisance to occur in a public park. Cases are cited in support of the proposition, such as Capp v. St. Louis, 251 Mo. 345, and Carey v. Kansas City, 187 Mo. 175. It is there held that a city is liable for injuries caused by a dangerous pool of water, or an excavation, which is allowed to remain uninclosed in a public park where people were expected to go for recreation.

Nuisance.

It is the duty of a city to use care to maintain its public parks, like its streets, in reasonably safe condition, and that duty it performs in a proprietary or private character. A failure to perform it by allowing unprotected pools and chasms to remain there, would render a city liable for ensuing damages, the same as an individual would be liable for damages caused by

the unsafe condition of his premises where people are invited to come. But the maintenance of good order in the park, the prevention of dangerous conditions there caused by gathering crowds or by the lawless or imprudent conduct of individuals, is a governmental function. The two cases are as distinct from each other as is the case of the city allowing a dangerous hole to remain in a street differs from the failure of a police officer to arrest a bully who is painting the town red. In the present case it is not claimed that the sham battle was itself a dangerous nuisance or that firing of the cannon was dangerous. The injury was caused directly by the presence of the jostling crowd and the negligence of some member of the battery who prematurely fired the gun. In such cases a municipal corporation is not liable. [Heller v. Sedalia, 53 Mo. 159; Cunningham v. Seattle, 5 L. R. A. (N. S.) 629, note; 4 Dillon on Mun. Corp. sec. 1660; Trower v. City of Louisiana, 198 Mo. App. l. c. 368-9, and cases cited on 370-1; Jolly's Admx. v. City of Hawesville, 89 Ky. l. c. 281.]

The demurrer was properly sustained as to the second count.

The judgment is affirmed. *Roy, C.,* absent.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.