CHARLES D'ARCOURT et al., Respondents, v. THE LITTLE RIVER DRAINAGE DISTRICT, Appellant.

St. Louis Court of Appeals. Opinion Filed September 18, 1922.

1. **MUNICIPAL CORPORATIONS: Defined.** The term "municipal corporation" is usually applied to corporations for local civil government.

2. ————: Corporations Intended as Agencies of Civil Government: Public Corporations. All corporations intended as agencies in the administration of civil government are public as distinguished from private corporations.

3. ————: ————: Quasi-Corporations: Defined. Public corporations which as agents of the State have fewer and more restricted functions to perform than the ordinary municipal corporation, such as counties, school districts, special road districts, etc., are sometimes termed "*quasi*-corporations," and are instrumentalities of the State, incorporated by the State, so that a specific public duty may be more effectively discharged by the State.

4. ———: ———: **Negligence: Negligence of Agents: Liability: Rule Stated.** Municipal corporations and *quasi*-corporations as agencies of the State are not liable for the negligence of their agents unless expressly made so by statute, except in those cases where municipal corporations act in their proprietary or corporate capacity as contradistinguished from strictly governmental functions.

5. **DRAINAGE DISTRICTS: Governmental Agencies: In Absence of Statute Not Liable for Damages for Negligent Construction of Works.** A drainage district, incorporated under the Circuit Court Drainage Act by authority of article 3, chapter 122, Revised Statutes 1899, and amendments thereto, being a *quasi*-corporation and governmental agency, and classified with counties, road districts and school districts, cannot be made to respond in damages in the absence of a statute on account of the negligent construction of the works of the district done and performed in the exercise of a governmental function.

Appeal from the Cape Girardeau Court of Common Pleas, Cape Girardeau County.—*Hon. John A. Snider,* Judge.

REVERSED.

*Oliver & Oliver* for appellant.

(1) The defendant's demurrer at the close of all the testimony should have been sustained. No cause of action is stated or proven against the defendant Drainage District. The plaintiffs allege that the defendant is a drainage district incorporated under the provisions of article 3, chapter 122, R. S. 1899, and the amendments thereto. This article is what is known as the Circuit Court Drainage Act. The status and position held by such districts in our scheme of government has been clearly defined by our appellate courts. They have been classified as political subdivisions of the State by some— as municipal corporations by others, but all the cases hold that they are governmental agencies based upon an exercise of the police power of the State. State ex rel. Kinder v. Little River District, 236 S. W. 848; State

ex rel. Caldwell v. The Little River Drainage District, 236 S. W. 15; Land & Stock Co. v. Miller, 170 Mo. 240; Drainage District v. Turney, 235 Mo. 80; State ex rel. v. v. Taylor, 224 Mo. 393; Morrison v. Morey, 146 Mo. 543; Barnes v. Construction Co., 257 Mo. 175; Wilson v. Drainage District, 257 Mo. 266; State ex rel. v. District, 269 Mo. 444; Houck v. Drainage District, 239 U. S. 261-2; L. R. D. D. v. Railroad, 236 Mo. 94; State ex rel. Mc-Allister v. Albany Drainage District, 234 S. W. 342; Arnold v. Drainage Dist., 234 S. W. 349. There can be no private function of a drainage district such, as this defendant. All of its acts look toward the betterment of the general welfare of the State. Their very existence is based upon an exercise of the police power. There can be no private corporate advantage come to it as such by the construction or maintenance of the levee in question or any of its other levees or ditches. All such ditches and levees are for the public good and the betterment of the general welfare. Under such conditions, there can be no liability against the defendant on the broad ground so frequently stated by the courts of this State that a municipality is not liable for the acts of its agents, even though they be negligent, if they are performed in a public or governmental service. Murtaugh v. St. Louis, 44 Mo. 479; McKenna v. City of St. Louis, 6 Mo. App. 320; Behrmann v. City of St. Louis, 273 Mo. 578; Trower v. City of Louisiana, 198 Mo. App. 352; Ulrich v. City of St. Louis, 112 Mo. 138; Cassidy v. St. Joseph, 247 Mo. 197; Healy v. Kansas City, 277 Mo. 619; Zummo v. Kansas City, 225 S. W. 934; Ford v. School District, 121 Pa. 543; Irvine v. Mayor etc., of Chattanooga, 47 S. W. (Tenn.) 419; Bates v. Houston, 37 S. W. (Tex.) 383; Bartlett v. Clarksburg, 43 L. R. A. 295, 45 W. Va. 393; Simpson v. Whateom, 33 Wash. 392, 63 L. R. A. 815; Arnold v. Drainage Dist., 234 S. W. 349. Counties, townships, special road districts, school districts, and other like political subdivisions of the State, when performing a public function or a governmental service have uniformly been held

exempt from liability. Arnold v. Drainage Dist., 234 S. W. 349. Reardon v. St. Louis County, 36 Mo. 555; Swineford v. Franklin County, 73 Mo. 279; Clark v. Adair County, 79 Mo. 536; Pundman v. St. Charles County, 110 Mo. 594; Searcy v. Clay County, 176 Mo. 515; Moxley v. Pike County, 276 Mo. 449; Lamar v. Bolivar Special Road District, 201 S. W. 890. (2) Plaintiffs' cause of action is *res adjudicata.* The demurrer at the close of the entire case should have been sustained. Any question that was raised or could have been raised, on the hearing of the exceptions to the commissioners' report assessing benefits and damages to the plaintiffs' land was concluded by the judgment confirming the report awarding $1,125 damages to the plaintiffs and condemning their property. The law, as stated in the first paragraph under this point, is well settled and supported by the following authorities: Norman's Land & Mfg. Co. v. Idalia Realty Co., 205 Mo. App. 474; Donnell v. Wright, 147 Mo. 639; Summet v. Realty Co., 208 Mo. 501; Emmert v. Aldridge, 231 Mo. 124; Cantwell v. Johnson, 236 Mo. 575; Spratt v. Early, 199 Mo. 491; City of St. Louis v. United Railways, 263 Mo. 387. (3) The plaintiffs are barred by reason of the receipt and release which they executed to the district.

*Giboney Houck* and *Hardesty & Limbaugh* for respondent.

(1) The defendant's demurrer to the evidence is unavailing against the verdict rendered on substantial evidence. Nash v. Brick Co., 109 Mo. App. 604; Ladd v. Williams, 104 Mo. App. 390. (2) In view of the statutes under which defendant was organized and in view of its drainage work having been done for the purpose of benefiting the landowners, and not purely and wholly for the purpose of benefiting the State, it is liable for its negligence in said work. Morrison v. Morey, 146 Mo. 543; Bungenstock v. Nishnabotna Drainage Dist., 163 Mo. 198; Sec. 6517, et seq., R. S. 1889; Land

& Stock Co. v. Miller, 170 Mo. 240; Art. 7, Ch. 102, R. S. 1909; State v. Heffernan, 243 Mo. 447; Lamar v. Bolivar Special Road Dist., 201 S. W. 890; Bruntmeyer v. Squaw Creek Drainage Dist., No. 1, 196 Mo. App. 360; Sec. 6517 et seq., R. S. 1889; Sec. 4378 et seq., R. S. 1919. (a) The case of Arnold v. Worth County Drainage Dist; State ex rel. Caldwell v. Little River Drainage Dist. and State ex rel. Kinder v. Little River Drainage Dist., and kindred cases cited by defendant do not disprove such liability, but confirm it. Arnold v. Drainage District., 234 S. W. 349; Sec. 4406, R. S. 1919; Bruntmeyer v. Squaw Creek Drainage Dist., 196 Mo. App. 360, 194 S. W. 748; Bunting v. Oak Creek Drainage Dist., 99 Neb. 843; Sawyer v. Camden River Drainage Dist., 102 S. E. 273; Spencer v. Wills, 102 S. E. 275; Bradbury v. Vandalia Drainage & Levee Dist., 236 Ill. 36; Ringering v. Wood River Drainage & Levee Dist., 212 Ill. App. 170; State ex rel. Caldwell v. The Little River Drainage Dist., 236 S. W. 15; State ex rel. Kinder v. The Little River Drainage Dist., 236 S. W. 848; Sec. 6 of Art. 10 of Constitution of Mo. Sec. 12753, R. S. 1919. (b) The drainage work was not exclusively for a public but was partly for a private purpose; and defendant's negligence relates not to discretionary acts by which such work was voluntary assumed, the drainage plan made and an assessment of benefits and damages had thereon, but such negligence relates to the ministerial acts of performing such work, and all the elements of liability are present. St. Louis v. Wenneker, 145 Mo. 238; Connor v. City of Nevada, 188 Mo. 154; State v. Heffernan, 243 Mo. 447; Woods v. City of Kansas, 58 Mo. App. 272; Land & Stock Co. v. Miller, 170 Mo. 252; Kinlough v. City of Maplewood, 201 S. W. 627; Johnson v. City of Chicago, 258 Ill. 494; Turpin v. Turlock Irr. Dist., 141 Cal. 1; Sec. 6517 et seq., R. S. 1889; Sec. 4378 et seq., R. S. 1919; (c) Cases in other jurisdictions holding drainage districts immune from such liability for negligence are based on drainage statutes different from ours, or on doctrines that have never obtained in our

jurisdiction. Nugent v. Miss. Levee Comrs., 58 Miss. 197; Lowe v. Levee Comrs. (Miss.), 19 So. 346; Elmore v. Drainage Comrs., 135 Ill. 269; Bradbury v. Vandalia Drainage Dist., 235 Ills. 36; Lamar v. Bolivar Special Road Dist., 201 S. W. 890; Hensley v. Reclamation Dist., 121 Cal. 96; Turpin v. Turlock Irr. Dist., 141 Cal. 1; Bungenstock v. Nishnabotna Drainage Dist., No. 1., 196 Mo. App. 360; Schalk v. Inter River Drainage Dist., (Mo. App.) 226 S. W. 277. (2a) Plaintiffs are not barred by the interlocutory decree against Mr. and Mrs. Houck, nor by the receipt plaintiffs executed to satisfy the final decree, because the award and payment to plaintiffs covered only the damages allowed them in the commissioners' report to which they filed no exceptions. Chapman v. Railway, 240 Mo. 592; 13 C. J. 312-313; Boschulte v. Elkhorn River D. Dist. (Neb.), 167 N. W. 730. Neither the decree nor the release can bar plaintiffs for the further reasons stated under those points and authorities of the brief in the Schwepker case, which are herewith submitted so far as applicable to this case, as follows: (3) The decree does not bar this suit for damages resulting from the negligent construction, maintenance and operation of the drainage works. 1. The decree covers only damages "sustained by reason of the construction" of the works—that is to say, damages resulting from the proper construction, maintenance and operation of the works. Secs. 5514, 5516 and 5518, R. S. 1909; Shear. & R. Neg., par. 10; Gilliland v. Railroad, 19 Mo. App. 416; 21 Enc. Law 495; West v. Holladay, 196 S. W. 403; Chapman v. Railway, 240 Mo. 592, 144 S. W. 469; Vansickle v. Drainage District, 186 Mo. App. 563, 172 S. W. 405. 2. Decrees of this character are uniformly held to be no bar to damage resulting even from a legal change in the plans or in the operation of the drainage works. Spencer v. Wills (N. C.), 102 S. E. 275; Dowd v. Drainage Dist., 160 Ill. App. 476; Ringering v. Woodriver Drainage & Levee District, 212 Ill. App. 170; Railroad v. Clark, 121 Mo. 169; Railroad v. St. Louis Union Stock Yards, 120 Mo. 541. 3. The decree

could not have legally contemplated negligence in the construction, maintenance or operation of the works. Such negligence could neither have been anticipated nor presumed. 20 C. J., p. 778, par. 233; Bungenstock v. Nishnabotna Drainage District, 163 Mo. 198; Chapman v. Railroad, 240 Mo. 592, 144 S. W. 469; Chicago, etc., R. Co. v. Lemorweir D. Dist., 135 Wis. 228; Bunting v. Oak Creek Drainage Dist., 99 Neb. 843; Cleveland, etc., R. Co. v. Hadley, 179 Ind. 429; Atchison, etc., R. Co. v. Eldridge, 41 Okl. 463; Turpin v. Turlock Irr. Dist., 141 Cal. 1; Sanitary District of Chicago v. Ray, 199 Ill. 63; Atchison, etc., R. Co. v. Jones, 110 Ill. App. 626; Cleveland, etc., R. Co. v. Pattison, 67 Ill. App. 351; Sanitary Dist. of Chicago v. Alderman, 113 Ill. App. 23; B. & O. R. Co. v. Quilling, 34 Ind. App. 330; Chicago R. I. & R. P. Co. v. Andressen, 62 Neb. 456; Mullen v. Canal & Water Co., 130 N. C. 496; Spencer v. Wills (N. C.), 102 S. E. 275. 4. The exceptions to the commissioners' report did not enlarge the scope of the decree so as to make it cover and bar damages which could not have been anticipated or presumed. (a) No such intention can be gathered from the exceptions or the decree. Chapman v. Railroad, 240 Mo. 592; Drug Co. v. Saunders, 70 Mo. App. 221; 17 Cyc. 684, 688. (b) Nor did the court have jurisdiction of the damages now sued for. It had no jurisdiction of the subject-matter of anticipated negligence, and even consent could not have conferred such jurisdiction. Dodson v. Scroggs, 47 Mo. 285, 287; 15 C. J., p. 736. (4) The deed does not bar this suit for damages resulting from the negligent construction, maintenance and operation of the drainage works. 1. No such intent can be gleaned from the four corners of the deed. 33 Cyc., p. 161, par. 3; Edwards v. Railroad, 82 Mo. App. 96; Baker v. Railroad, 122 Mo. 396; Kellogg v. Malin, 50 Mo. 496; Chouteau v. Railroad, 122 Mo. 375; Boschulte v. Elkhorn River Drainage District (Neb.), 167 N. W. 730. 2. Such provision, even if it existed in the deed, would be void as against public policy. 13 C. J., p. 444, par. 381; Maxwell Operating Co. v. Harper,

138 Tenn. 640; Davis v. Janeway, 55 Okl. 725; Dodson v. McCurnin (Iowa), 160 N. W. 927; Wiggins Ferry Co. v. Railroad, 128 Mo. 224.

DAUES, J.—This is an action for damages for alleged destruction of crops by water escaping from breaks in a levee constructed by the defendant. The cause was tried to a jury, resulting in a verdict and judgment for plaintiffs in the sum of $618. Defendant appeals.

The petition alleges the incorporation of the drainage district in 1917 under the "Circuit Court Drainage Act" by authority of article 3, chapter 122, Revised Statutes 1899, and amendments thereto; that defendant as such constructed certain levees and ditches under such authority; that it was the special function of a certain levee, known as the "North Levee," located in Cape Girardeau county, to prevent flood waters from escaping to the lowlands to the north of said levee, including the lands of the plaintiffs. The petition charges that defendant negligently built said north levee with logs, stumps and other improper materials imbedded therein, that large cracks and slides were negligently permited to form and remain in said levee; and that defendant negligently failed to take steps to cover said levee with growing grass for the protection of same; that while in such condition, and while the levee was still green and unseasoned, defendant put said drainage system into use; that on May 12, 1918, the levee broke under pressure of the flood waters, thereby discharging a large portion of the water over a large area of territory and damaging plaintiffs' crops to the extent of $618.

After unsuccessfully challenging the sufficiency of the petition by demurrer, defendant filed an answer which, after admitting its incorporation as a drainage district, is, first, a general denial; second, alleges that the defendant is a public corporation of this State, a political subdivision thereof created as an agency of the government of the State, and as such is not liable for damages as laid in the petition; and, third, pleads that

the issue of the defective construction of the north levee is *res adjudicata,* in that this issue was adjudicated by the circuit court of Butler county on the hearing of the exceptions to the commissioners' report in the original proceedings assessing the benefits and damages when the drainage district was established. In the same count it is pleaded that plaintiffs had executed a receipt and release reciting payment of $1125 to them by the defendant in accordance with the judgment of said circuit court confirming the commissioners' report as compensation and damages for the taking of certain of plaintiffs' land, and "for any resulting damage, if any, to the balance of our tract of land by reason of the construction and maintenance of the works and improvements of said drainage district."

The reply, in effect, is a general denial.

The court on motion struck out the second and third count of defendant's answer, and refused to permit the defendant to either plead or prove the facts showing *res adjudicata.*

The defendant is an extensive drainage district in Southeast Missouri embracing lands in Bolinger, Cape Girardeau, Scott, Stoddard, New Madrid, Pemiscot and Dunklin counties. At the time of its incorporation, we are advised, it comprised approximately 500,000 acres of land. After its organization, the district as required by law organized a Board of Supervisors. With the aid of engineers, the board formulated and adopted a drainage plan and carried same into execution. Commissioners were duly appointed to assess benefits and damages that would accrue and result by reason of the putting of that project into operation. After hearing and disposing of all the exceptions filed to the commissioners' report, a final judgment was entered by the circuit court of Butler county on such issues. No appeal was taken by any land owner from said final judgment. Thereupon it appears that the drainage district issued its bonds and levied a tax to pay the principal and interest of the bonds as same accrued. With the proceeds from

the sale of the bonds the construction of this gigantic drainage work was undertaken.

This drainage plan provided for what is known as a "Headwater Diversion System." Same provides for the diversion of Castor River, Crooked Creek, White Water River, Hubble Creek and other smaller streams rising in the hills and which formerly discharged into the swamps within the boundaries of the district. By this project the waters from these streams are combined and conducted into the Mississippi River.

The "North Levee," about which the controversy arises, begins near the village of Dutchtown, in Cape Girardeau county, and runs in a southerly direction a distance of about a mile, then east and parallel with the diversion channel and levee of the Headwater Diversion System. The north levee and the headwater diversion channel are about 1000 feet apart and make up what is known as the floodway. The diversion channel proper is constructed to carry the water into the Mississippi River during ordinary stages of the stream flowing from the hills, but during extraordinary storms of rainfall the channel is insufficient to carry the floodwaters and a portion of same overflows and spreads out into the detention basins constructed for that purpose. So much for a general outline of the district and its purposes.

During an extraordinary rainfall in May, 1918, the water overflowed the floodway. The north levee just south of Dutchtown broke in several places, and the water escaped through these breaks and overflowed plaintiffs' land and destroyed their crops. This action is to recover damages so sustained.

The actual construction of the levee and ditches was done by independent contractors, and while no such point is made here, it appears that the levee and ditches, though completed, had not been accepted and received by the defendant district from the contractors at the time that the breaks occurred, nor at the time that the case was tried. Nevertheless, the work had progressed in May, 1918, to such extent that the water of White

Water River was turned into the diversion channel by the defendant.

There was evidence on the part of plaintiffs tending to show that the north levee had numerous cracks and some slides in it; that a chunk of wood four to six inches in diameter projected out of the levee where one of the breaks occurred; also evidence that a stump was found in the levee, though it does not appear that the levee broke at the point where witness Albert Schroeder testified he saw the stump in the levee; and that a steel cable less than two inches in diameter was left in the levee on the land side of same, that is, not the side against which the water in the ditch flows.

It appears that the specified base of the north levee was sixty feet wide and about fifteen feet high, with a crown, eight feet wide, and that the levee was actually constructed to an oversize in order to allow for shrinkage. Engineers produced by plaintiffs testified that levees with such cracks and foreign materials contained in same are condemnable and apt to break.

Defendant's expert witness testified that the chunk and cable complained of would not have the effect of weakening the levee sufficiently to cause same to break in a flood such as occurred in May, 1918.

Plaintiffs' overflowed land is adjacent to the levee and ditch of the defendant, and it is admitted by plaintiffs in their replication that $1125.00 was awarded them by the circuit court as damages for the prosecution of this work, and that plaintiffs executed a satisfaction of said judgment. Said release recites that said sum is accepted "as compensation and damages for the taking and condemnation of a certain strip of land in said commissioners' report and judgment described for the use and purposes of The Little River Drainage District, and as compensation and damages for any resulting damages, if any, to the balance of our tract of land by reason of the construction and maintenance of the works and improvements of said district." The land involved in this suit is included in the above release.

Defendant's first assignment of errors is that the court erred in overruling defendant's demurrer to the evidence at the close of the whole case; that no cause of action is stated or proven against defendant drainage district.

The question brought to us by this assignment is very important and of far-reaching effect, and we confess is not without attending difficulty. It calls for a determination of the status and position held by the drainage district in our scheme of State government, and particularly whether such drainage districts are liable for the negligent acts of their agents in the construction and maintenance of levees and ditches. It determines not only this case, but also a great number of others headed this way.

It might be well to consider, briefly, the general question of liability of municipal corporations and *quasi*-corporations. The term "municipal corporation" is usually applied to corporations for local civil government. All corporations intended as agencies in the administration of civil government are public, as distinguished from private corporations. There are other public corporations which as agents of the State have fewer and more restricted functions to perform than the ordinary municipal corporation. These are counties, school districts, special road districts, etc. They are sometimes termed "*quasi*-corporations," and are instrumentalities of the State incorporated by the State so that a specific public duty may be more effectively discharged by the State. [Dillon on Municipal Corporations (5 Ed.), p. 62.]

This same authoritative work points out, and is in entire accord with the decisions in our jurisdiction, that municipal corporations in performing a duty imposed upon them as the agent of the State in the exercise of strictly governmental functions are not liable for the wrongful acts or negligence of their officers or agents unless the corporation is expressly made liable by statute for such. When, however, the municipality acts upon

matters touching local necessities and conveniences for their own citizens, that is to say, when performing corporation duties, they are held to be liable as a legal individual. This is so though there is no statute creating such liability, since in such cases the liability is implied. [See also 6 McQuillin on Municipal Corporations, p. 5399, and cases there cited.]

Municipal corporations for civil government, it is generally recognized, are held liable to a much more extent than are *quasi*-corporations with restricted functions.

The rule may be deduced from text and Missouri decisions that municipal corporations and *quasi*-corporations as agencies of the State are not liable for the negligence of their agents unless expressly made so by statute, except in those cases where municipal corporations act in their proprietary or corporate capacity as contradistinguished from strictly governmental functions. [4 Dillon on Municipal Corporations (5 Ed.), p. 2852; Trower v. City of Louisiana, 198 Mo. App. 352, 200 S. W. 763; Cassidy v. City of St. Joseph, 247 Mo. 197, l. c. 206, 152 S. W. 306; Healy v. Kansas City, 277 Mo. 619, 211 S. W. 59; Behrmann v. City of St. Louis, 273 Mo. 578, 201 S. W. 547.]

We then come to the crucial question as to what is the proper classification of the defendant drainage district in the field of public corporations. That same is an agency of the State is not debatable. Our decisions sometimes denominate drainage districts as municipal corporations and sometimes as *quasi*-municipal corporations.

Our Supreme Court, in the very recent case of State ex rel. Caldwell v. Little River Drainage Dist., 236 S. W. 15, being a suit to collect taxes against this defendant, held that the power to drain swamp and overflowed land is referable to the police power of the State and is a legislative function which the State may exercise through the agency of drainage districts. The language and reasoning of that opinion weighs well in support

of the position, that the drainage district is strictly engaged in exercising governmental functions, and that the benefits to landowners are merely incidental. The opinion, in part, is as follows:

"Such districts are incorporated under the initiative of the landowners and, under specific statutory mandates, are managed and controlled by the landowners. But, notwithstanding the landowners have such a large voice in bringing them into existence and in managing their affairs, from the standpoint of the State, the districts are none the less legislative agencies, exercising exclusively governmental functions; the private benefits accruing to the individual landowners being purely incidental. [Land & Stock Co. v. Miller, 170 Mo. 240, 70 S. W. 721, 60 L. R. A. 190, 94 Am. St. Rep. 727; Irrigation v. Williams, 76 Cal. 1. c. 367, 18 Pac. 379; Donnelly v. Decker, 58 Wis. 461, 473, 17 N. W. 389, 46 Am. Rep. 637.]

"The statutes of this State under which drainage districts are organized declare them to be public corporations. Because of their inherent nature and because of the purposes for which primarily they are created, we have repeatedly held that they are not private corporations in any sense; that they are political subdivisions of the State and exercise prescribed functions of government."

State ex rel. Kinder v. Little River Drainage District, (Mo. Sup.) 236 S. W. 848, is to the same effect.

A very learned and illuminating discussion of this subject is contained in an opinion by the late Judge MARSHALL in Mound City Land & Stock Co. v. Miller, 170 Mo. 240, 70 S. W. 721. There it is pointed out that the State is directly interested in the drainage laws because the health of the inhabitants within such district is conserved as well as other matters, and that such drainage districts organized under the drainage laws of Missouri are "public, governmental corporations and in no sense private corporations." The opinion compares drainage districts with certain other public works, as follows:

"The principles underlying the cases upholding the validity and constitutionality of levee and irrigation laws apply with even greater force to drainage laws. For, from a sanitary point of view, the dangers to health arising from overflows occasioned by floods are intermittent, while the danger to health arising from marshes and stagnant pools of water are continuous and ever present. There is certainly as much, if not greater, reason and necessity for drainage laws as there is for levee and irrigation laws."

Another very recent case directly in point here is Arnold v. Worth County Drainage Dist., 234 S. W. 349, by the Kansas City Court of Appeals. It is there held that drainage districts organized under the laws of 1913 are "*quasi*-public corporations" to be classified with counties and road and school districts, and that an action for damages does not lie for an injury received because of the negligent maintaining of a defective bridge by the district. In that case an action was brought against the district for damages, charging negligence in failing to erect and maintain a suitable bridge as required by law. The district, not being able to secure the material in time to construct a permanent bridge, erected a temporary bridge across one of its ditches, which bridge was defective, and plaintiff fell off of the bridge with his team and wagon, resulting in injury. The petition charged negligent construction of the bridge. In reversing a judgment for plaintiff in that case, the Appellate Court said:

"It is contended that the court erred in failing to give defendant's instruction in the nature of a demurrer to the evidence. We think the contention is well taken. Drainage districts incorporated under the Laws of 1913 are not private corporations, but *quasi*-public corporations. They are public governmental agencies, and constitute political subdivisions of the State [Arthaud v. Grand River Drainage Dist., (Mo. App.), 232 S. W. 264; Morrison v. Morey, 146 Mo. 543, 560, 48 S. W. 629; Land & Stock Co. v. Miller, 170 Mo. 240, 258, 70 S. W.

721, 60 L. R. A. 190, 94 Am. St. Rep. 727; Wilson v. Drainage & Levee Dist, 237 Mo. 39, 46, 139 S. W. 136; Nauman v. Drainage Dist., 113 Mo. App. 575, 87 S. W. 1195; Squaw Creek Drainage Dist. v. Turney, 235 Mo. 80, 90, 138 S. W. 12; In re Little River Drainage Dist., 236 Mo. 94, 139 S. W. 330.]

"The districts act as an arm of the State in building or failing to build the bridge required by the statute, and are to be classified with counties, road districts, and school districts. While a drainage district is organized by petition of the holders of the majority of the acreage therein (all holders of real estate need not join, but some may object), it is universally held to be an arm of the State, and is no more liable for negligence than would be the State."

The Arnold case, supra, and other cases holding likewise, cite and follow 2 Farnham on Waters & Water Rights, pp. 1145, 1146, which lays down the rule thus:

"Municipal corporations are by statute generally made liable for their acts of negligence the same as private individuals. When, the question arises, however, as to the liability of a county or *drainage district,* a different principle applies. Such organizations are merely subdivisions of the State, and they cannot be sued any more than the State can, unless authority to bring the suit is granted by statute. Therefore, in determining whether or not they are liable for their negligent acts, attention must be given to the provisions of the statute. Unless a county is made liable, either by general statutory provisions or by the statute under which it attempts to carry on drainage proceedings, no suit can be brought to recover for an injury caused by it; but the action must be against the officials causing the injury." (Italics ours.)

The Springfield Court of Appeals, in the case of Greenwell et al. v. Wills & Sons and Drainage District, 239 S. W. 578, likewise reached the conclusion that the drainage district was not liable for the destruction of crops on lands within the district resulting from neg-

ligence in the construction of the levee. The opinion in that case, by Judge BRADLEY, quotes at length and follows the Arnold case, supra, the court saying.

"The court points out in the Arnold case that there are two cases which apparently announce a different rule to that laid down by Farnham; that these cases are Bradbury v. Vandalia Drainage Dist., 236 Ill. 36, 86 N. E. 163, 19 L. R. A. (N. S.) 991, 15 Ann. Cas. 904, and Bruntmeyer v. Drainage Dist., 196 Mo. App. 360, 194 S. W. 778, and to these might be added Schalk v. Inter-River Drainage District, 226 S. W. (Mo. App.) 277. In the Schalk case it is said: 'The other questions raised by the appellant, to-wit, that this character of corporation was of such a governmental nature that damage by it was without injury, that the plaintiff was estopped because he had made no complaint in the circuit court when damage and benefits were fixed under the statute forming the corporation, and that a constitutional right had been invaded, are disposed of in the case of Bruntmeyer v. Squaw Creek Drainage Dist., 196 Mo. App. 360, 194 S. W. 748.' In the Schalk case the district was organized under the circuit court statute. [Laws 1913, p. 232.] In Bates County v. Wills et al., 269 Fed. 734, the Circuit Court of Appeals, 8th Circuit, in dealing with a Missouri drainage statute held that drainage districts are not such corporations that may sue and be sued in the absence of statutory authority to do so. [See same case 254 U. S. 571, 41 Sup. Ct. 375, 65 L. Ed. 791.]

"The Bruntmeyer, Schalk and Bradbury cases, however, when analyzed do not announce a different rule. Authority to sue in these cases is found in the Constitution. It must be kept in mind that these cases were for damages to land lying *outside* the district. In the Bruntmeyer and Schalk cases suit and recovery were permitted against the district, although there was no statute authorizing suit against the district. But our Constitution, article 2, section 21, provides that private property shall not be taken or damaged for public use without just compensation. This provision of the Constitu-

tion is self-enforcing independent of any statute. Little Tarkio Drainage District v. Richardson, 237 Mo. 49, 139 S. W. 576. The Bruntmeyer case was based squarely on the constitutional provision above mentioned. The Schalk case followed the Bruntmeyer case. The Bradbury case was bottomed on a similar constitutional provision. Thus the law in this State is that one whose lands or crops outside the district have been damaged by the prosecution of the improvement may maintain a suit against the district for his damages under the constitutional provisions mentioned. On the other hand if lands *in* the district or crops thereon are damaged by the *proper* prosecution of the work recovery cannot be had against the district because such damages are awarded and adjudged in the organization of the district. If damage result to one in the district because of negligent prosecution of the work he cannot recover against the district because in such case there is no statute authorizing suit against the district. Such is the distinction as we see it between suits to recover against the district for damage to property *in* and *outside* the district.''

A similar case is Tant v. Little River Drainage Dist. (Mo. App.), 238 S. W. 848.

It will be observed that the Springfield Court of Appeals in the Greenwell and Tant cases (decided March 11, 1922), held that drainage districts are not liable for damages resulting to crops *within* the district from negligence in building or maintaining levees. These cases seem to announce the doctrine that landowners *outside* the district may recover at any time after the organization of the district for damages resulting to land or crops by overflow caused by the improvement, that is, as we understand it, damages resulting from a proper execution of the drainage plan. Here we are not called upon to express an opinion on that question.

The theory of the Greenwell and similar cases is that the district is not liable for damages necessarily arising out of a proper and skillful construction and main-

tenance of such works or improvements prescribed by the plan adopted where condemnation proceedings have been had and the compensation and damages of the injured 'party have been assessed and awarded in such proceeding, or the injured party has been afforded his day in court for the assessment and award of such compensation and damages. This is so,' as considered in those cases, because damages necessarily resulting from the execution of the plan for drainage adopted are conclusively presumed to have been compensated in the award of the commissioners. But under the rule of those cases a landowner outside of the district who was not a party to the condemnation proceedings or the proceedings to organize the district, may at any time, because of the Constitution itself, recover for damages, on lands not in the district, accruing because of the proper construction of the plan or system of drainage.

In the instant case we are concerned with a cause bottomed entirely upon allegations of negligent construction and and maintenance of the levee and plaintiffs' land is within the district. A very small portion of the land, it seems, extends beyond the limits of the district. The parties, however, treat the same as being entirely within the district. All of the land here involved was included in the condemnation proceedings, and both parties proceed upon such assumption.

In Vansickle v. Drainage Dist., 186 Mo. App. 563, 172 S. W. 405, in an opinion by Judge NORTONI, this court held that a landowner, though in the district, whether such owner availed himself or not of his rights at the time of the original condemnation, is barred afterwards from claiming damages resulting from the prosecution of the work. While this case is not considered on the question of negligence, the petition clearly was bottomed on negligence.

However, we do not understand that negligence and carelessness in building a levee, or in maintaining it afterwards, is or can be made a matter to be taken into consideration by the viewers or commissioners in per-

forming their office under the statute in assessing damages. We must therefore definitely face and decide the question whether the district as such is liable for the tortious acts of its agents.

Drainage districts, such as we are dealing with here, are not included in the class of municipal corporations comprehending cities and towns. Cities and towns have a diversity of affairs to administer. Some pertain to governmental functions; others to business matters for local convenience. For the former, they are not liable; for the latter, they are liable as individuals. Then we have the other class of public corporations known as *quasi*-corporations, such as counties, school districts and special road districts. In this class drainage districts properly belong, and we so classify and characterize same.

It is true, drainage districts are voluntarily organized and the improvement does eventuate in an enhancement of property values. This, we confess, has caused serious reflection in the case. We do not think, however, that these elements become determinative of the proper classification of drainage districts. The fact that land values are affected is incidental, and, as pointed out above, it has been so decided by our Supreme Court. It should be remembered that land values are affected in the establishment of special road districts and other quasi corporations.

In Houck v. Drainage Dist., 248 Mo. 373, l. c. 391, 154 S. W. 739, the Supreme Court, in characterizing this defendant, said, in part:

"So the prosperity and growth of the productive communities represented by its farms are equally matters of general public concern. That concern is represented by the difference between a State composed of bogs and marshes not only unproductive but unhealthy, and a State in which the lands yield bountifully to the call of the husbandman and breathe health instead of miasma."

In State ex rel. v. Little River Drainage Dist., 269 Mo. 1. c. 458, 190 S. W. 897, our Supreme Court said: "The fact that drainage districts are public corporations and that their canals and ditches are devoted to and therefore are public uses, is too clear for discussion and has long been settled. [Morrison v. Morey, 146 Mo. 543; Carter v. Fabius River Drainage Dist., 262 Mo. 1. c. 556.]"

Clearly the district is a governmental agency possessing a restricted delegation of sovereignty, and unless, the State creating it for better functioning of the government, expressly imposes liability for negligence, then it is no more liable than the State itself.

The State has delegated to the circuit courts and to the governing boards of the drainage districts so much of the sovereignty of the State as to authorize them to put into being these improvements for the purpose of draining swamps for the general good of the public. No other classification is either logical or legal, in our opinion.

No analogy can be drawn between the liability of cities for negligence in the construction of sewers and negligence of drainage in constructing dikes such as we have here, for reasons already discussed. It must be considered also that the necessity for sewers in a city is created by the city itself.

There is a conflict in the authorities from other jurisdictions on the question before us. However, the great weight of authority from other States is that drainage districts are not liable for negligence. The non-liability to respond in damages usually is placed upon the ground that the liability of such districts depends upon statutes creating the district, and that in the absence of a statute imposing such liability, none exists. The laws creating the defendant district do not expressly impose such liability.

As no question is presented touching the power of the district to levy taxes to pay damages for the default and misconduct of the persons charged with the execu-

tion of the plan, we do not consider that question, though conceivably that might become a very serious problem.

We hold that defendant as such drainage district is a *quasi*-corporation and governmental agency, and is to be classified with counties, road districts and school districts. Being such and so classified, it cannot be made to respond in damages in the absence of a statute on account of the negligent construction of the works of the district done and performed in the exercise of a governmental function.

Learned counsel for respondents point out cases in our jurisdiction which, it is contended, reach a different result from the one here expressed. These cases are fully considered in the Arnold and Greenwell cases, supra, and for that reason no further discussion concerning same is made here.

The case of Bungenstock v. Drainage Dist., 163 Mo. 198, 64 S. W. 149, relied upon by respondents, is clearly distinguishable on the facts. It will be seen also that no defense was made in that case on the ground that the district was a governmental agency. Another difference exists between the Bungenstock case and the instant case, and that is, that under the procedure for condemnation of right of way in that case no issue was raised as to the inherent defectiveness and special damages that would arise from the "breaking, washing out of the levee and overflowing of the plaintiff's lands in times of heavy flood." In the instant case this issue was raised in the original proceedings in condemnation. The land in the Bungenstock case was outside the district, and that case involved a faulty drainage plan—one that was not correct from a hydraulic standpoint. Moreover, we are following the more recent rulings of our Supreme Court which hold, in effect, that drainage districts are governmental agencies. As already said the Springfield Court of Appeals and the Kansas City Court of Appeals, have very recently decided against liability of drainage districts under circumstances such as arise in the case at bar.

Judgment is reversed. *Allen, P. J.,* and *Becker, J.,* concur.