Charles C. TEANEY, by his next friend, Minnie F. Eggleston and Minnie F. Eggleston, Plaintiffs-Appellants,

v.

CITY OF ST. JOSEPH, Missouri, Defendant-Respondent.

No. KCD 26904.

Missouri Court of Appeals, Kansas City District.

March 3, 1975.

Downs & Pierce, Don Pierce, St. Joseph, for plaintiffs-appellants.

Thomas R. Summers, Ronald E. Taylor, St. Joseph, for defendant-respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

Plaintiff appeals from an order of the trial court dismissing his petition. Plaintiff, a minor, filed his petition by his mother and next friend against the City of St. Joseph for injuries allegedly received in Pryor Park, owned and maintained by the City. In its most pertinent part to this inquiry, the petition alleged:

"That part of a metal pole was protruding from cement with a jagged edge, which had previously been a long pole supporting a Martin bird house and was in the area where people such as this plaintiff might play, and had so existed for a long time prior to this incident, rendering it unsafe for the public in general and this plaintiff in particular to play in said park and that as such created a hazardous and dangerous condition and defendant knew, or by the exercise of ordinary care, should have known of all the foregoing facts and conditions in time, by the exercise of ordinary care, to have repaired and remedied said dangerous condition before the time of plaintiff's injuries hereinafter enumerated, but carelessly and negligently failed to do so."

The petition was in two counts with the first count seeking to obtain damages for

the injury to the minor plaintiff and the second count by his next friend seeking damages for loss of services and medical expenses.

The City filed a motion to dismiss under Rule 55 as it existed prior to September 1, 1973. The City's motion was based upon a claim "that the erection of a Martin house for the purpose of abating the number of mosquitoes in the City of St. Joseph is a governmental function, and that plaintiffs may not recover for defendant's negligence in the exercise of a governmental function".

The court heard evidence on the City's motion from Richard Halloran, Director of the Public Health Department of the City. Mr. Halloran stated the City Council had appropriated the sum of $1,122.00 for the purchase of Martin houses to be erected in an attempt to control mosquitoes. Mr. Halloran stated the money came from the Public Health Department budget and this was the only money spent in 1971 by the City for the control of mosquitoes. On cross-examination, Mr. Halloran stated he did not have any direct knowledge of the effect of the Martin houses on the mosquito population in St. Joseph. He further stated he had not counted the number of mosquitoes before and after the Martins, but he had read and heard that Martins were effective in controlling such insects.

The petition alleged the plaintiff was injured on November 5, 1972. Mr. Halloran stated the money was appropriated for the houses in May of 1971. There is no evidence as to when the Martin houses were actually erected, although Mr. Halloran stated he thought he had seen one Martin house in Pryor Park.

The theory of the City and of the trial court dismissing the petition was that the erection of the Martin houses to control the mosquito population was a governmental function since the Martin house was for the purpose of protecting the health of the public in St. Joseph. On this appeal the City seeks to sustain the dismissal on the same theory citing the recent decision by the Supreme Court en banc in Watson v. Kansas City, 499 S.W.2d 515 (Mo.banc 1973). The City also cites other cases concerning governmental immunity and the nature of acts relative to public health which qualify under such doctrine.

In considering whether plaintiffs' petition states a cause of action in negligence it is essential to bear in mind, "[t]he motion to dismiss admits, for the purpose of the motion, all facts well pleaded. Molumby v. Shapleigh Hardware Co., Mo. App., 395 S.W.2d 221, 225, and in considering a petition on a motion to dismiss the court must construe it liberally and favorably to plaintiff, giving him the benefit of all inferences fairly deducible from the facts stated. Hall v. Smith, Mo., 355 S. W.2d 52, 55". Jaime v. Neurological Hospital Association of Kansas City, 488 S. W.2d 641 (Mo.1973).

Under the above rule plaintiff's petition alleges the existence of a metal pole protruding from cement with a jagged edge located in Pryor Park and that such pole had so existed for a long time prior to plaintiff's injury. The only reasonable construction to be placed on this allegation is that whereas there was once a bird house, there was none at the time of injury, nor had there been one for some time.

Whatever temptation there may be to explore the interesting question of the true character of a Martin bird house purchased with public health funds, located in a public park, for the purpose of reducing the mosquito population to promote the public health, i.e., be it governmental or proprietary, must be resisted. This for the reason it would be of no consequence whether the bird house was a governmental function or a proprietary function of the City since under this pleading the bird house did not exist at the time of the injury and had not for a long time prior thereto. Therefore, the jagged edge of the met-

al pole here would simply be another metal pole in a park, the dangerous propensity, or a lack thereof, to be determined by a jury.

The petition further alleged the jagged pole had existed for a sufficient length of time for the City to have actual or constructive knowledge of its presence; the failure of the City to correct the situation; and the fact the park was made dangerous by its existence. This is a conventional pleading of the breach of the duty of the City to maintain such park in a reasonably safe condition. The City introduced no evidence to show how long the Martin house had been gone, and in the absence of any evidence, plaintiffs' petition is taken as true. In that setting there is no basis on which to find governmental use and consequent immunity from liability.

While there is a division of authority among the states as to whether or not maintaining a park falls under the governmental or proprietary function of the city, Missouri has long held that it falls within the proprietary function. Capp v. City of St. Louis, 251 Mo. 345, 158 S.W. 616 (banc 1913); Jackson v. City of St. Louis, 422 S.W.2d 45 (Mo.1967); Catalano v. Kansas City, 475 S.W.2d 426 (Mo.App.1971).

The City does not contend the obligation imposed upon it in the operation of the park is a governmental function but relies upon Healy v. Kansas City, 277 Mo. 619, 211 S.W. 59 (1919) and Wasserman v. Kansas City, 471 S.W.2d 199 (Mo.banc 1971). Those cases involved mob violence in a park and the court in *Wasserman* relied on the decision in *Healy* in holding the maintenance of good order in a park and the prevention of dangerous conditions there caused by gathering crowds or by the lawless or imprudent conduct of individuals is a governmental function. In both cases the court was careful to note the duty of a city to maintain its parks in a reasonably safe condition is performed in its proprietary function. The decisions in *Healy* and *Wasserman* do not aid the plaintiffs here

since those decisions were based upon the action of large crowds or mobs in the park and were not based upon the failure of the city to maintain park grounds and its appurtenances in a reasonably safe condition.

Thus, the question here is purely and simply one of whether or not the plaintiff's petition states a cause of action against the City in its proprietary, rather than in its governmental function. Since the bird house had ceased to exist a long time prior to the injury, this case falls squarely within the cases holding the duty of the City to maintain its parks in a reasonably safe condition is a proprietary function. For that reason, the petition did state a cause of action as against the defense raised. The judgment is reversed and the cause remanded for further proceedings.

All concur.